### Philo M. Hupp et al. v. Riley E. Hupp and George C. Hupp, Adm'rs, etc.

1. Fraudulent Conveyances.—A conveyance from a father to his sons, without adequate consideration and for the purpose of hindering and delaying his creditors, is fraudulent.

2. Jurisdiction—*Circuit Court Over Matters in Probate Court.*— The Probate Court has jurisdiction of estates and accounts of administrators. For orders of distribution resort must be had to that court; the Circuit Court can not assume to dispose of a fund which is a part of an estate in the hands of an administrator and in administration in the Probate Court.

Bill to Set Aside a Conveyance.—Error to the Circuit Court of La Salle County; the Hon. Charles Blanchard, Judge, presiding. Heard in this court at the May term, 1895. Affirmed. Opinion filed December 10, 1895.

Fowler Bros., attorneys for plaintiffs in error, contended that a gift, to be fraudulent as to creditors, must leave the debtor insolvent. Bump on Fraudulent Conveyances, 269–275; Bollinger v. Kasoton, 111 Ill. 265; Long v. Long, 19 Ill App. 383.

In a case of this kind the proof must show not only that

the transaction is fraudulent, but that the grantees partici-
pated in the fraud.    The proof must also be clear and satis-
factory upon that point.    Schrœder v. Walch, 120 Ill. 403;
Geerhart v. Zick, 31 Ill. App. 390; Coale v. Moline Plow
Co., 134 Ill. 350; Nichol v. Wallace, 31 Ill. App. 408; Young
v. Stearns, 3 Ill. App. 498; Gridley v. Bingham, 51 Ill. 153;
Meyers v. Kinzie, 26 Ill. 36; Ewing v. Rankin, 20 Ill. 448;
Hotch v. Jordan, 74 Ill. 414; Bennett v. Stout, 98 Ill. 47.

A sale to relatives is not a badge of fraud.    It is no evi-
dence that the transaction is fraudulent.    The fact also that
the vendor may have been in debt is not evidence of fraud
that will impeach the conveyance or make the transaction
fraudulent.    Nelson v. Smith, 28 Ill. 495; Wightman v. Hart,
37 Ill. 123; Waterman v. Donaldson, 43 Ill. 29

BLAKE & KELLEY, attorneys for defendants in error, con-
tended that the conveyance was without consideration and
fraudulent.

When it appears that the conveyance is from the father,
who is in debt, of all his property, to a son, a young man
without means and still a member of the father's family,
good faith is not shown.    Fleming v. Hiob, 3 Ill. 390.

A conveyance which is void as in fraud of creditors because
founded in part upon a false and pretentious debt will not
be sustained to the extent of the adequate and honest con-
sideration paid by the grantee.    Baldwin v. Shoat, 125 N.
Y. 553; Billings v. Russell, 4 N. E. Rep. 531.

The fact that Sedwick W. Hupp voluntarily conveyed
the said premises in question to Philo Hupp and Wilson
Hupp, his sons, is of itself presumption of fraud.    Choteau
v. Jones, 11 Ill. 300; Hulse v. Mershon, 125 Ill. 52; Wallace
v. White, 12 Ill. App. 177; Russell v. Fanning, 2 Ill. App.
632; Clark v. Morris, 22 Ill. 434; Emerson v. Bemis, 69 Ill.
537; Tunison v. Chamblin, 88 Ill. 378.

The simple fact that Elizabeth C. Hupp testifies that she
never considered Sedwick W. Hupp was indebted to her,
and that she never expected him to pay her anything, is suf-
ficient to vitiate the deed from Sedgwick Hupp to Philo

Hupp, and from Philo Hupp to E. C. Hupp, for a consideration, or payment of any such debt. Coale v. Moline Plow Co., 134 Ill. 350; Frank v. Humphrey, 12 N. E. Rep. 720; Chamberlain v. Jones, 16 N. E. Rep. 178; Mason v. Pierron, 34 N. W. Rep. 921; Solinsky v. Bank, 4 S. W. Rep. 836.

It is only necessary to participation of fraud on the part of the grantee that it appear that he had knowledge of facts and circumstances from which the intent is reasonably inferable. Boies v. Henny, 32 Ill. 130; Treadwell v. McEwen, 123 Ill. 253.

Notice of the fraudulent intent of the debtor is *per se* evidence of *mala fides* on the part of the grantee, whatever his real intent, as the intent of the debtor is in that case imputed to him. Hanchett v. Goetz, 25 Ill. App. 445; Cowling v. Estes, 15 App. 155; Thompson v. Duff, 19 Ill. App. 75.

And notice is to be inferred, as notice is to be inferred in other cases, from circumstances which would put a man of ordinary prudence upon inquiry. Cowling v. Estes, 15 Ill. App. 255; Thompson v. Duff, 19 Ill. App. 75; Smith v. Mohler, 24 Ill. App. 400.

MR. PRESIDING JUSTICE CARTWRIGHT DELIVERED THE OPINION OF THE COURT.

Defendants in error, as administrators of the estate of Mary E. Hupp, deceased, filed their bill in equity against plaintiffs in error, seeking to set aside conveyances made by Sedwick W. Hupp and Elizabeth C. Hupp, his wife, to their sons, Wilson Hupp and Philo Hupp, and a conveyance of part of the same lands by Philo Hupp and wife to the said Elizabeth C. Hupp, on the ground that they were made without consideration, for the purpose of hindering and delaying defendants in error, as creditors of said Sedwick W. Hupp. The bill called for answers under oath and was duly answered. On a hearing a decree was entered setting aside the conveyance from Sedwick W. Hupp and wife to Philo Hupp, and the conveyance from Philo Hupp and wife back to his mother, as fraudulent, and in default of payment of the judgment of defendants in error the premises were ordered to be sold.

The evidence consisted mainly of the testimony of defendants, who were called and examined by complainants. It appears that Sedwick W. Hupp had given a note to his mother, Mary E. Hupp, and she having died, complainants, who were administrators of her estate, began a suit against him on the note May 28, 1891, and he was served with summons June 5, 1891. The conveyances were made September 4, 1891, and judgment was afterward recovered on the note for $753.35. The evidence seems to us to support the finding that the conveyances set aside were fraudulent and without consideration. The deed to Philo Hupp purported to have been made for a consideration of $10,440, and an attempt was made by Sedwick Hupp and Philo Hupp to show such a consideration. Philo testified that he agreed to pay $10,450, and he figured up $8,470 as paid by assuming two mortgages of $1,000 and $2,000, respectively, giving notes, one of which was for $1,470, paying $1,000 cash, realized from crops on the land the season before the deed was made, and $1,000 wages due him from his father for working on the farm at $700 a year. The balance he said that he paid by deeding forty-six acres back to his mother, because she "made a kick" and said that she didn't want to be left without anything. Sedwick Hupp testified the same as Philo about the amount of wages and the cash which came from the crops on the land, but beyond those items it is very difficult to get anything definite out of his testimony. He talked about taking notes and turning them over to his wife for what he owed her, but did not seem to know the amount, number or anything definite about them, and his whole testimony was of a confused and contradictory nature. He said that there was a previous written agreement for the sale, and in this he was contradicted by Philo, who testified that the transaction was wholly verbal. He also said that Philo was to pay cash down, and a couple of thousand dollars that he owed Philo, and then he said it was what he owed, cash down, and notes due in two and five years. He testified that notes were given, but he could not tell how many, and had forgotten how much they came to, but said

that an attorney did the business for his wife and the notes were given to her. Again he said that he received five notes and turned them over to his wife in part payment of what he owed her; that one note was due in five years for about $3,000, and turned over to his wife, and that Philo had paid him in full, the last payment being about $700, made three or four months before the hearing. He also said that the deeds were made at his wife's request, and in this he was contradicted by her. The supposed notes did not appear anywhere except the one for $1,470, and on cross-examination, Philo concluded that it was given for stock rather than as a payment of the land. So far as the land retained by Philo is concerned, the only tangible things, with the appearance of a consideration, that can be found in the evidence, are the supposed wages and produce of the land before the deed was made.

It was asserted that the consideration for the land conveyed back to his mother by Philo Hupp, was an indebtedness from Sedwick Hupp to her. Sedwick Hupp testified that he owed his wife about $7,000, for which she held notes against him; that the first note was given in 1862, or 1863, for $450; that he got $200 from her in 1868 and gave a note; that these were the only notes that he gave; that he had received other money from her; that at the time the deeds were made his son Wilson gave a note of $2,000 turned on that indebtedness, and that as above stated he turned over to her the notes of Philo on the same debt. Philo testified that the deed to her was executed because she became dissatisfied after the deed was made to him and wanted her share, and he was compelled to deed it back as a part of her dower, as he called it. The attorney who drew the conveyances said that he figured up the amount that they claimed that Sedwick Hupp had received from his wife's father; that it came to about $7,500; that Philo was to pay her $4,500 on account of that debt, as part of the consideration for the deed to him, and was to make a mortgage securing it, but that at the suggestion of the attorney the deed was made, inasmuch as she claimed dower

and a homestead interest.  Elizabeth Hupp did not seem to
know that her husband owed her, and denied that the
indebtedness was figured up.  She said that she had a note
at one time, but did not preserve it, and it had been
destroyed for a number of years.

The effort to show valid considerations for the deeds
must, we think, be regarded as a failure.

The conveyances made at that time left Sedwick Hupp
without property in this State, to which complainants could
resort for the collection of their note, and the court was
warranted in finding that his purpose was to escape its pay-
ment.  And the facts and circumstances were such that his
purpose to put property out of his hands and shift the title
to his sons and wife must have been inferred by the grantees.
The evidence justified the conclusion that all participated
in the execution of the design which had the effect to hinder
and delay complainants as creditors.

The complainants had in their hands $283.33 as a distrib-
utive share of Sedwick Hupp in his mother's estate, and it
is urged that the court should have required them to credit
that sum to him on the judgment.  The jurisdiction of the
estate and of the accounts of complainants as administrators
was in the Probate Court.  In the order for a partial dis-
tribution in the estate that court had ordered that no pay-
ment of his share should be made to him.  The Probate
Court having jurisdiction and having made that order,
resort should have been had to that court concerning it,
and the Circuit Court was right in not assuming jurisdic-
tion to dispose of that fund.  The decree will be affirmed.